# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RICHARD HOLLYFIELD** | : | **DOCKET NO. 17-cv-0084** |
| | | **SECTION P** |
| **VERSUS** | : | **JUDGE SUMMERHAYS** |
| **JACK HURST, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 27] filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants Jack Hurst, Justin Deville, and Porchea Jackson. This motion is filed in response to the lawsuit brought by plaintiff Richard Hollyfield, an inmate in the custody of the Louisiana Department of Public Safety and Corrections ("DOC"). Hollyfield, who is represented by counsel, complains about medical care he received while incarcerated.

## I.
### BACKGROUND

Hollyfield complains about medical care received during his incarceration at Allen Correctional Center ("ACC"), from May 31 to September 18, 2016. Doc. 15. Specifically, he alleges that he was injured on May 13, 2016, when a medical resident at the University of New Orleans Medical Center "grabbed his scrotum during a medical examination for a hernia repair issue and crushed it." Doc. 34 at 7. On May 31, he was transferred from Elayn Hunt Correctional Center to ACC. *Id.* At ACC, medical staff discontinued the pain medication prescribed by his surgeon even though Hollyfield repeatedly complained of pain and requested that the surgeon's

-1-

orders be followed. Doc. 15 at 3. Medical staff also refused to provide the scrotal device prescribed by Hollyfield's surgeon in May 2016 to prevent further injury, until July 29, 2016. *Id.* at 3–4. Hollyfield requested to be moved to a dormitory closer to the cafeteria because of the pain he experienced while walking. *Id.* at 4. ACC physician Jack Hurst and ACC health services administrator Justin Deville refused this request, and Hurst told Hollyfield he "would have more than just his nuts hurting" if he brought it up again. *Id.* Hollyfield states that he made several sick calls through the month of June relating to the pain he was experiencing, but that Hurst and Nurse Porchea Jackson refused to see him even though his unit captain supported his claim of severe pain and need for medical assistance. *Id.* at 4–7. Hollyfield maintains that ACC medical personnel refused to treat his pain or otherwise give medical attention for the remainder of his time at that facility. *Id.* at 7–8.

Hollyfield's medical records show that he was assessed by Hurst on May 31 and June 2, 2016. Doc. 27, att. 4, pp. 2–14. As a result of those assessments Hurst created a Chronic Care Treatment Plan for Hollyfield, which included a referral to psychiatry. *Id.* at 14. Hurst discontinued Hollyfield's Neurontin prescription but renewed other medications and prescribed a support device, which Hollyfield filled on June 4, 2016. *Id.* at 6, 14, 56–57. Following sick calls made by Hollyfield on June 7 and 8, 2016, Hurst also prescribed a 30-day course of naproxen for pain relief starting on June 8. *Id.* at 17–18, 22, 58. Hollyfield made further sick calls complaining of pain on June 9, in response to which a chest X-ray was ordered, and June 30, in response to which Hollyfield was prescribed ice packs and Tylenol. *Id.* at 23–28. Hollyfield made another sick call for testicular pain on July 17. *Id.* at 30. The nurse who examined him noted some swelling to one testicle, ordered a course of Motrin, and referred Hollyfield to the physician for evaluation of his chronic complaint. *Id.* at 30–31. Hollyfield saw the physician, Dr. Chatman, on July 19. *Id.* at 32.

Chatman granted Hollyfield's request for another kind of support device, made a referral for a urology consult, and ordered another course of naproxen.[1] *Id.* at 32–34. Hollyfield made sick calls on July 31 and August 3, still complaining of testicular pain. *Id.* at 35–36. At the second visit Chatman noted that Hollyfield might be better served by a transfer, given the limited options for treating his pain at ACC. *Id.* at 36. He was taken to Elayn Hunt Correctional Center ("EHCC") for a consult at their surgical clinic on August 8, after which a course of ibuprofen was prescribed, and ACC personnel completed a medical transfer request for him on August 15. *Id.* at 40–44. Hollyfield was transferred to Robert LaSalle Correctional Center on or around September 19, 2016. *See* doc. 1, p. 1 (complaint); doc. 27, att. 4, pp. 52–53 (medical records transfer and DOC email about EHCC follow-up appointment).

After unsuccessfully pursuing administrative remedies against ACC personnel, Hollyfield filed suit in this Court on January 18, 2017, against Hurst, Jackson, and Deville. Doc. 1. He alleges violations of his constitutional rights under 42 U.S.C. § 1983 and negligent medical care under Louisiana law. The defendants now move for summary judgment.

## II.
### LEGAL STANDARDS

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] Hollyfield alleges in his response brief that Chatman also ordered a prescription (amitriptyline) for nerve pain, but later told him that Deville had cancelled the order. Doc. 34, p. 14. The medical records do show that Chatman ordered a course of amitriptyline on July 19, 2016, though there is no indication that the order was filled. Doc. 27, att. 4, p. 32; *see id.* at 55–65 (medication records). Hollyfield, however, provides no proof that it was cancelled or by whom. He also provides no citation for Chatman's alleged statement other than his own declaration, and nothing to overcome its exclusion as hearsay. *See* doc. 34, att. 1, p. 14. Meanwhile, Deville provides an affidavit in which he states that he is a registered nurse but that his duties at ACC "primarily addressed assurance of compliance with accreditation and contractual standards, as well as staffing issues" and that he had no role in Hollyfield's housing assignments or prescriptions. Doc. 27, att. 3. He states that his only involvement in Hollyfield's care was in August 2016, when he was advised by an ACC nurse of Hollyfield's "litany of issues" and suggested to Chatman that he (Chatman) review the case for possible medical transfer. *Id.* Accordingly, the Court does not credit Hollyfield's new allegations about Deville's role in cancelling his prescriptions.

law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### APPLICATION

### A. *Deliberate Indifference Claims*

Hollyfield first alleges that he is entitled to damages under 42 U.S.C. § 1983 because the medical care he received from defendants amounted to a violation of his rights under the Eighth Amendment. Deliberate indifference to a prisoner's serious medical needs by prison officials

violates the Eighth Amendment and therefore gives rise to a claim for damages against state actors under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Under this theory, a prison official is not liable unless he both knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind;" thus the test is "[s]ubjective recklessness" as used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (quoting *Farmer*, 511 U.S. at 838–40). A prisoner's disagreement with his treatment does not constitute deliberate indifference, absent exceptional circumstances. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Instead, the prisoner must submit evidence to show that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct evincing a wanton disregard for serious medical needs. *Id.*

Hollyfield points to Hurst's record of having his license suspended for substance abuse as his reason for not prescribing stronger pain medication. Doc. 34, pp. 30–31. He complains about Hurst and Deville's refusal to move him to a different dormitory and the fact that Hurst's examination notes provide "no indication of any physical examination." *Id.* at 17. He also provides accounts from other inmates at ACC who were dissatisfied with their care. *See id.* at 18–30.

Hollyfield fails to refute the defendants' showing that he received timely medical care for his complaints. Instead, his only dispute appears to be with the types of accommodations offered and medication prescribed. Although Hollyfield continued to complain of pain and requested different accommodations, the Eighth Amendment does not protect against mere discomfort or inconvenience. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). The defendants' decisions on this matter are a "classic example of a matter of medical judgment." *Gobert*, 463 F.3d at 346.

As multiple district courts in this circuit have found, a plaintiff does not establish deliberate indifference where the record shows he was given pain medication and other treatment, and he only complains that different or additional treatment was not ordered. *E.g.*, *Estes v. Bower*, 2002 WL 628755 (N.D. Tex. Apr. 17, 2002), aff'd, 73 F. App'x 747 (5th Cir. 2003); *Lusk v. Dallas Cnty. Sheriff's Dep't*, 2002 WL 31757706 (N.D. Tex. Nov. 29, 2002); *Green v. Doe*, 2004 WL 1152035 (N.D. Tex. May 24, 2004); *Sides v. Abangdon*, 2010 WL 4537914 (S.D. Miss. Nov. 2, 2010); *see also Payton v. Gusman*, 2013 WL 5530280, at *11 (E.D. La. Oct. 7, 2013) (collecting cases). Given the care provided for Hollyfield's testicular pain – including pain medication, a support device, consult at EHCC, and, ultimately, a medical transfer – he cannot show that his treatment evidences deliberate indifference to his serious medical needs on the part of any defendant.

To the extent that Hollyfield intends to raise a claim based on the manner in which Hurst or any other defendant allegedly spoke to him, this claim cannot survive a motion for summary judgment. "[M]ere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations." *Robertson v. City of Plano, Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (alteration omitted); *see also Hines v. Cain*, 2007 WL 891880 at *4 (E.D. La. Mar. 20, 2007) (collecting cases); *see also Hudson v. Univ. of Tex. Medical Branch*, 441 Fed. App'x 291, 292–93 (5th Cir. 2011) (finding that mere threats also fail to support a claim of retaliation). Allegations of callous or rude behavior alone in the provision of medical care also fail to support a deliberate indifference claim. *Atkins v. Lofton*, 373 Fed. App'x 472, 473 n. 1 (5th Cir. 2010) (unpublished); *Frederick v. Pittman*, 2014 WL 4729407 at *8 (S.D. Tex. Sep. 23, 2014). Hurst's alleged threat, even if true, would be insufficient to show a constitutional violation in light of the constitutional adequacy of his response to Hollyfield's complaints.

### B. *Negligence*

The Louisiana Medical Malpractice Act ("LMMA"), LA. REV. STAT. § 40:1231.1 *et seq.*, governs claims of malpractice against qualified health care providers. Under the LMMA, malpractice is defined as "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." LA. REV. STAT. § 40:1231.1(13). Additionally, Louisiana law recognizes that prison officials have a duty to provide inmates with "reasonable medical care." *Harper v. Goodwin*, 930 So.2d 1160, 1163 (La. Ct. App. 2d Cir. 2006).

A plaintiff claiming medical malpractice by a physician must establish, by a preponderance of the evidence: (1) the defendant's standard of care, (2) his breach of that standard, and (3) a causal connection between the breach and the claimant's injuries. LA. REV. STAT. § 9:2794(A). Nurses who perform medical services are subject to the same standard of care as physicians: to exercise the degree of skill ordinarily employed under similar circumstances by members of the profession in good standing in the same community or locality, and to use reasonable care and diligence, along with their best judgment, in their application of skill to the case. *Little v. Pou*, 975 So.2d 666, 674–75 (La. Ct. App. 2d Cir. 2008). Expert testimony is usually required to establish the applicable standard of care. *Schultz v. Guoth*, 57 So.3d 1002, 1006–07 (La. 2011). However, an exception is made where "the negligence is so obvious that a lay person can infer [it] without the guidance of expert testimony." *Id.*

Hollyfield provides no expert support for his negligence claims. The record in this case prevents the Court from otherwise finding any basis to determine that a defendant might have breached the applicable standard of care. Accordingly, defendants are entitled to judgment as a matter of law on these claims as well.

## IV.
### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. 27] will be **GRANTED** and all claims in this matter **DISMISSED WITH PREJUDICE**.

**THUS DONE** in Chambers this 13th day of May, 2019.

_____
**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**